## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**RICHA L. JACKSON,**

     **Plaintiff,**

     **v.**

**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY, KANSAS,**

     **Defendant.**

**Case No. 2:21-cv-02387-HLT**

## MEMORANDUM AND ORDER

Plaintiff Richa L. Jackson brings this employment discrimination action against her former employer, Defendant Unified Government of Wyandotte County and Kansas City, Kansas. Plaintiff claims Defendant discriminated against her and subjected her to a hostile work environment because of her gender/sex, race, and disability. She brings these claims under Title VII (gender/sex and race), 42 U.S.C. § 1981 (race), and the Americans with Disabilities Act ("ADA") (disability). She also claims that Defendant violated the Family and Medical Leave Act ("FMLA") and retaliated against her for making complaints of disparate treatment, harassment, and a hostile work environment.

Defendant seeks summary judgment on all Plaintiff's claims (Doc. 41) and asks the Court to strike two declarations that Plaintiff submitted in opposition to Defendant's motion (Doc. 57). The Court determines that Plaintiff did not preserve most of her claims because she either failed to administratively exhaust them or include them in the pretrial order. Some claims don't require administrative exhaustion, but they fail on the merits. Those claims that that Plaintiff <u>did</u> adequately exhaust lack sufficient supporting evidence to submit them to a jury. And for the unexhausted claims, even if Plaintiff had properly exhausted them, she still fails to show a prima

facie case of disparate treatment, hostile work environment, or retaliation. No reasonable jury could find in Plaintiff's favor on any of her multitude of claims, and the Court therefore grants summary judgment in favor of Defendant. The Court need not rule on whether to strike the declarations even though they suffer from many infirmities. Summary judgment is still appropriate when the properly supported and non-hearsay portions are considered.

## I.      BACKGROUND[1]

Plaintiff is a female African-American with allegedly disabling health conditions. Defendant is a municipality. Plaintiff began working for Defendant's Health Department in October 2019 as Program Manager of Clinical Services. Terry Brecheisen was the Director of the Health Department when Plaintiff was hired. Terrie Garrison was Plaintiff's direct supervisor.

### A.      Claims of Disparate Treatment and Harassment

Garrison was excited when Plaintiff was first hired. But over time their relationship deteriorated. Most of Plaintiff's allegations of bad treatment involve Garrison. Plaintiff believes she was subjected to disparate treatment and a hostile work environment based on the following actions:

- Plaintiff was required to submit a writing sample when she applied for her job but no one else was required to do so;

- Plaintiff was not allowed to negotiate her salary when hired and was paid less than white employees;

- Plaintiff was not adequately trained;

- Garrison told Plaintiff that her daughter was beat up by a black girl;

---

[1]    The facts are either undisputed or construed in favor of Plaintiff as the nonmoving party. Additional facts are included throughout the order for clarity. The Court's review of the facts in this case was complicated by Plaintiff's repeated citation of evidence that did not support the "uncontroverted fact." The Court repeatedly reviewed deposition testimony cited by Plaintiff that did not, in fact, support the proffered statement.

- Garrison sided with Christina VanCleave, one of Plaintiff's white female subordinates, about staffing for COVID-19 test sites;

- Garrison intervened in a dispute between Shana Lodder and Gia Garrett, two of Plaintiff's subordinates;

- Garrison took several job duties and responsibilities from Plaintiff;[2]

- Garrison made a comment comparing biologic children to foster children and made several comments to Plaintiff about Plaintiff not having biologic children;

- Garrison unjustly targeted Plaintiff, micromanaged her, and was aggressive and threatening toward Plaintiff because of her sex;

- Plaintiff lost compensation and other benefits;

- Plaintiff was ridiculed, stripped of authority, and falsely accused of misconduct;

- Garrison requested daily reports of Plaintiff's work when she began working remotely full-time on June 9, 2020;

- Plaintiff was not given keys to the building or a credit card;

- Garrison declined to implement Plaintiff's suggested back-to-work plan;

- Garrison chewed Plaintiff out about how she handled VanCleave's request to work from home;

- "Garrison would constantly behave in an aggressive, hostile, disrespectful, and unprofessional manner towards minority employees which was viewed as discriminatory while supporting and befriending Caucasian employees of Unified Government. Garrison micromanaged and nitpicked minority employees over Caucasian employees. Garrison would go in and view [Plaintiff's] calendar daily in an effort to know [Plaintiff's] whereabouts . . . . When [Plaintiff] was in the office, Garrison would often barge in without knocking to see what she was doing. Garrison did not treat the white employees in a harsh manner." Doc. 49 at 17.[3]

---

[2]  Plaintiff also alleges in the pretrial order that she was given extra job duties. Doc. 36 at 15, 16.

[3]  Defendant seeks to strike the declarations of Gia Garrett and Betty Criss, two black females whose declarations are cited in support of this statement. Plaintiff should have disclosed these witnesses in discovery. The Court does not condone counsel's "sandbagging" witness testimony and likely should strike their declarations. (At a minimum, the Court probably should strike Criss's declaration. Garrett was at least identified by Defendant as a person who may have discoverable information.) This is not the first time counsel has engaged in this tactic. *See, e.g.*, *Hunter v. Costco Wholesale Corp.*, 2023 WL 2734237, at *13-14 (D. Kan. 2023). Nevertheless, their declarations are cumulative of Plaintiff's own testimony about the negative behavior of Garrison. The Court accepts that Garrison was not an ideal supervisor and did not treat all employees equally. It is uncontroverted that the environment in the Health Department was stressful and toxic, due in some part to Garrison's leadership. The Court construes the

### B.      Plaintiff's Health Conditions

Plaintiff has diabetes but neither Juliann Van Liew nor Garrison was aware of her condition.[4] Plaintiff's brother-in-law was diagnosed with lupus, and Plaintiff informed Garrison of the diagnosis. Plaintiff also told Van Liew that a family member had lupus and "they were trying to determine if she also shared that diagnosis." Plaintiff underwent lab tests in July 2020 that indicated she might have an autoimmune disorder. She was supposed to undergo more testing but did not follow up. Plaintiff also has anxiety and is unable to bear children.

Between June 5, 2020 and June 9, 2020, Plaintiff communicated with Garrison about multiple health conditions. She requested to work from home and take the afternoon off on June 5 because she needed "a break," had been snapping at her husband, and had been forgetful. She indicated she planned to contact EAP. Plaintiff began taking anxiety medication on June 8. Plaintiff emailed Garrison on June 9 to tell her about a growth on her head and that her doctor wanted her to work from home for a month and then reevaluate. She emailed Garrison a letter from her doctor stating that Plaintiff "is currently under my medical care and I recommend she work from home until July 12 and will reassess at that time." Doc. 42-17 at 2. The letter also provided, "If you require additional information please contact our office." *Id.* The letter did not explain why Plaintiff needed to work from home, and Garrison did not know the reason.

---

facts in favor of Plaintiff at this stage and therefore does not need the additional statements from Garrett and Criss to reach a decision here. The Court does not strike the declarations because they do not make a difference. Summary judgment is warranted despite the content of the declarations. But counsel is cautioned that the failure to supplement disclosures during discovery has serious consequences and will likely result in the Court striking the witness and any testimony.

[4]      Plaintiff argues that Garrison knew she had diabetes because (1) Garrison knew Plaintiff left the office early once to have her blood sugar tested and it was elevated and (2) Garrison described Plaintiff as "overweight." Garrison is a nurse and Plaintiff therefore charges her with knowledge of Plaintiff's diabetes diagnosis. But these two items do not controvert Garrison's testimony that Plaintiff did not tell her that she had diabetes.

### C.       Plaintiff's Complaint and HR Investigation

Plaintiff complained to HR on June 15, 2020 about Garrison. She complained that Garrison was racially biased. HR employees met with Plaintiff on June 22, 2020 to gather more information about her complaint. Plaintiff complained not only about Garrison, but she also complained about VanCleave. Plaintiff also complained that new hires were able to negotiate their salaries and that she was paid less than some of her subordinates.

HR investigated Plaintiff's complaints and interviewed twenty-one individuals. HR issued a report in December 2020 finding no evidence of disparate treatment based on race. But HR also found Plaintiff's pay should be increased and that Garrison should attend training for leadership and management.

### D.       Alleged Pay Disparity

Brecheisen had a policy of bringing in new hires at Step 1 of a position's pay range with no salary negotiation. Plaintiff's starting salary was within her job's range, at Step 1. This is the same range and step as Barbara Kempf, Plaintiff's predecessor.

Brecheisen retired in December 2019. Garrison took over his position temporarily and allowed new hires to negotiate their salaries. Van Liew became Director of the Health Department in May 2020 and permitted negotiation of salaries.

Plaintiff did not have a clinical nursing degree. But she had nine subordinates (some clinical staff and some support) who reported to her. Plaintiff's pay was lower than four of her subordinates. The following chart identifies the comparators for Plaintiff's salary:

| Employee | Race | Gender | Position | Tenure[5] | Supervisor |
|---|---|---|---|---|---|
| Plaintiff | African-American | Female | Program manager of clinical services (non-clinical) | None | Garrison |
| Christina VanCleave | White | Female | Program supervisor (non-clinical) | 18 years | Plaintiff |
| Cristi DeSimone | White | Female | Medical laboratory supervisor (clinical) | 19 years | Plaintiff |
| Shana Lodder | White | Female | Public health nurse supervisor (clinical) | Hired after Plaintiff | Plaintiff |
| Marilyn Maier | White | Female | Nurse practitioner (clinical) | 3 years | Plaintiff |
| Ashley Lause | White | Female | WIC manager, registered dietician | 6 years | Health Department Director |
| Rollin Sachs | White | Male | Manager for air quality and environmental health | 20 years | Health Department Director |
| Elizabeth Groeneweghe | White | Female | Chief Epidemiologist | 9 months | Garrison |
| Wesley McKain | White | Male | Program supervisor | 6 years | Garrison |

### E.     Residency Requirement

Defendant requires that new employees become residents of Wyandotte County within one year of their start date. The County Administrator may grant an extension of time if he determines the employee has shown substantial evidence of progress. HR regularly sends reminders of the residency requirement to non-resident employees. HR sent reminders to Plaintiff in August and September 2020. Plaintiff requested an extension in October 2020 because she was in the midst of adopting a foster child. She was required to remain in Missouri throughout the adoption process,

---

[5]    Tenure is measured from the time Plaintiff was hired.

which Plaintiff believed would take more than a year. Defendant granted a six-month extension and required updates every thirty days. Defendant also informed Plaintiff she may receive another four-month extension if necessary for her adoption process. Plaintiff resigned before her six-month extension expired.

Plaintiff knew of other employees who received indefinite extensions. Katherine Carttar, a white female, is exempt from the residency requirement throughout her husband's term as the mayor of Kansas City, Missouri. Plaintiff also testified about two white male employees: one was given an indefinite extension because his dog was not allowed in Wyandotte County and the other was allowed to transition to a contractor to avoid the requirement. But Plaintiff had to submit documentation and "pay fees to submit rental applications and incur multiple inquiries in her credit report," even while out of the office on FMLA leave. Doc. 49 at 24.

### F.     Alleged Retaliation and Adverse Employment Actions

Plaintiff was never disciplined or suspended. Neither was she given a verbal or written warning. Garrison did, however, express concern about Plaintiff's attendance and performance at her three-month review. Garrison then asked Plaintiff to provide daily reports when she began full-time remote work in June 2020. Garrison noticed one missing block of time on Plaintiff's daily report on June 20, 2020. The relevant time was when Plaintiff was meeting with HR to complain about Garrison. Van Liew told Garrison that Plaintiff was working and not to worry about it. Garrison dropped the matter.

### G.     FMLA Leave

Plaintiff requested FMLA leave on November 9, 2020. When Garrison learned of the request, Garrison forwarded the email to Van Liew with the comment "I am mad." But Garrison was not involved in approving or denying leave. HR reviewed the request with accompanying

doctor's certification and approved FMLA leave from November 6, 2020 through November 22, 2020. Plaintiff's doctor then submitted a second and third FMLA certification. HR extended Plaintiff's leave each time, ultimately through January 21, 2021.

Plaintiff told her therapist on December 1, 2020 that she was looking for another job and planned to sue Defendant. She repeated her intent to resign to her therapist multiple times in December and January. She resigned on January 21, 2021, advising Garrison and Van Liew that her medical team had recommended that she not return to work. Plaintiff did not return.

## II.     STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

## III.    ANALYSIS

The Court now turns to Plaintiff's claims. The Court addresses them in the following order: (1) claims not administratively exhausted; (2) claims not preserved in the pretrial order; (3) claims for which no exhaustion is required; (4) properly exhausted claims; and (5) unexhausted claims alternatively considered on the merits.

### A.      Claims Not Administratively Exhausted

Defendant argues that Plaintiff failed to administratively exhaust many of her claims. A plaintiff bringing claims under Title VII and the ADA must administratively exhaust her claims with the EEOC before filing suit. Failure to file an EEOC charge for a discrete employment incident permits the employer to raise a failure-to-exhaust affirmative defense.[6] *See Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1185 (10th Cir. 2018). The exhaustion rule has two purposes: (1) to give notice to the charged party, and (2) to give the EEOC an opportunity to investigate the claims so that it can encourage settlement and voluntary compliance with federal law. *See Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018). Therefore, a plaintiff's claims are generally limited "by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id.* A plaintiff's allegations are liberally construed, but "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.* (emphasis omitted). Each discrete incident of alleged discrimination or retaliation must be exhausted. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

Plaintiff filed a charge with the EEOC. It is the general nature of that charge that is problematic. The EEOC's charge of discrimination form contains a section for the charging party to include a description of her claims. In that section, Plaintiff stated:

> Charging Party ("CP") is an African American woman with a medical condition that would qualify as a disability under the ADA. CP was hired on as a Clinical Program Manager with Respondent in October 2019. During CP's hiring process, she was treated arbitrarily including but not limited to being required to submit information white similarly situated employees were not required to submit. The same treatment has continued on a daily basis since CP

---

[6]   Plaintiff frames the issue as one of subject matter jurisdiction. It is not, and it has not been in the Tenth Circuit since 2018.

> was hired and continues regularly. Further, white similarly situated
> employees with less seniority and experience than CP are paid more
> than CP unjustifiably. CP believes that her race, gender, and
> disability are the reason for the discriminatory treatment she has
> received since she began her employment with Respondent. After
> making numerous complaints to management about the concerns
> regarding discriminatory treatment, harassment, and hostile
> working conditions, CP has been treated worse and believes that
> such treatment is in retaliation for reporting discriminatory
> treatment.

Doc. 42-5 at 2. The charge alleges that the discrimination took place from 10-17-2019 through 10-5-2020 and the "continuing action" box is checked. And Plaintiff also checked the boxes indicating the discrimination was based on race, color, sex, retaliation, disability, and "other." Plaintiff was represented by counsel at the time of her charge.

The Court now compares the content of the EEOC charge to the claims Plaintiff raises in this case: (1) Title VII disparate treatment and hostile working environment claims based on gender/sex; (2) ADA claims for disability-based disparate treatment, hostile work environment, and failure to accommodate; (3) Title VII disparate treatment and hostile work environment claims based on race; (4) Title VII and ADA retaliation claims based on gender, race, and disability; and (5) constructive discharge. Only the race-based Title VII disparate pay and retaliation claims are sufficiently described in the EEOC charge and timely exhausted.

### 1. Disparate Treatment and Hostile Working Environment Claims Based on Gender/Sex

The lack of factual detail in Plaintiff's description troubles the Court. Plaintiff now brings claims that Defendant treated her differently because of her gender. Specifically, Plaintiff claims discrimination because she cannot have biologic children. She also claims she "was unjustly targeted, micromanaged, lost compensation and other benefits, and she was subjected to aggressive and threatening behavior from Garrison in particular because of her sex." Doc. 36 at 15. Plaintiff

claims this created a hostile working environment. But Plaintiff did not raise these Title VII allegations in her EEOC charge.

The only suggestion in the EEOC charge that Plaintiff was treated differently or subjected to a hostile working environment because of gender or sex is the generic statement, "CP believes that her race, gender, and disability are the reason for the discriminatory treatment she has received since she began her employment with Respondent." This statement, even combined with the "sex" box being marked, gives the EEOC no indication of what investigation should be done. There is no mention of discrete actions being taken because of gender or sex, no names, and no dates. A plaintiff's allegations are liberally construed, but "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Smith*, 904 F.3d at 1164 (emphasis and citation omitted). There is also no detail suggesting Plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Hunt v. Riverside Transp., Inc.*, 539 F. App'x 856, 859 (10th Cir. 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)), *overruled on other grounds by Lincoln*, 900 F.3d at 1185; *see also Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 667 (10th Cir. 2004) ("Mitchell's EEOC charge contains no factual allegations of treatment in manner or degree sufficient to allege a hostile work environment."); *Walker v. Wormuth*, 2021 WL 5113679, at *3-4 (D. Kan. 2021) ("[H]er EEO complaints must allege some facts to indicate a hostile work environment, such that she was subject to ongoing pattern of intimidation and insult or 'a workplace pervaded by abuse.'").

Plaintiff's conclusory charge is insufficient to exhaust a gender or sex discrimination or hostile work environment claim. *See Williams v. CoreCivic, Inc.*, 2018 WL 372439, at *4 (D. Kan.

2018) (terming statement "I believe this was discrimination against me because of my race, black . . ." as a "wholly conclusory statement, insufficient to administratively exhaust a race discrimination claim" (citations omitted)); *Manning v. Blue Cross & Blue Shield of Kan. City*, 2012 WL 2449843, at *2-3 (D. Kan. 2012), *aff'd*, 522 F. App'x 438 (10th Cir. 2013) (describing similar statements in administrative charge as vague, generalized language, insufficient to exhaust). "While precise pleading is not required for purposes of Title VII exhaustion, a complete absence of factual specificity, such as here, defeats a plaintiff's subsequent claims." *Manning*, 2012 WL 2449843 at *3 (citing *Pierson v. K.W. Brock Directories, Inc.*, 2008 WL 2782755, at *3 (D. Kan. 2008) (finding "I was sexually harassed at work. I complained to management about it and finally felt forced to quit" insufficient to exhaust)). Claims raised in federal court that were not raised in the administrative complaint below are not viable. *See, e.g.*, *Cirocco v. McMahon*, 768 F. App'x 854, 861 (10th Cir. 2019) (affirming a dismissal on administrative exhaustion grounds where "the retaliation claim [the plaintiff] designated in her EEO complaint was simply not the retaliation claim she pursued in the district court"); *Hamilton v. Dep't of Veterans Affairs*, 2016 WL 7326280, at *7 (D. Kan. 2016) (finding a failure to exhaust where the complaint "alleges additional discriminatory and retaliatory acts that plaintiff never asserted in an administrative proceeding").

For these reasons, the Court determines Plaintiff failed to administratively exhaust her Title VII disparate treatment and hostile work environment claims based on gender/sex. But even if Plaintiff's EEOC charge can be read to include those claims, Plaintiff fails to establish a prima facie case for either claim. The Court briefly discusses the merits of the claims *infra* in Section III.E.

###### 2.   Claims for Disability-Based Disparate Treatment, Hostile Work Environment, and Failure to Accommodate

The same is true with respect to any disability-based claim of disparate treatment or hostile work environment under the ADA. Plaintiff now alleges that she reported she suffers from diabetes and lupus and is unable to birth children. She claims to have requested specific accommodations but says she "was subjected to arbitrary and unjust treatment in the form of being given extra job duties, having her job performance micromanaged and ridiculed, being stripped of authority, and falsely accused of misconduct." Doc. 36 at 15-16. Again, she alleges this created a hostile work environment.

The only sentence in the EEOC charge that might indicate what needed to be investigated is the same sentence cited above: "CP believes that her race, gender, and disability are the reason for the discriminatory treatment she has received since she began her employment with Respondent." Doc. 42-5 at 2. This conclusory charge is insufficient to exhaust a disability discrimination or hostile work environment claim. *See Williams*, 2018 WL 372439, at *4; *Manning*, 2012 WL 2449843, at *2-3. It is even less suggestive of the existence of a failure to accommodate claim.[7] Plaintiff failed to preserve any claim under the ADA for disparate treatment, hostile work environment, or failure to accommodate through her EEOC charge.

---

[7]   Plaintiff discusses a mythical claim for failure to accommodate as if it's a foregone conclusion that it exists. Defendant's proposed uncontroverted fact number 52 states, "In her charge of discrimination, [Plaintiff] made no mention of discipline issued to her or a failure to accommodate a disability." Doc. 42 at 15-16. Plaintiff's response to this statement, in part, states, "Although [Plaintiff's] EEOC charge does not use the word discipline, it does indicate that [Plaintiff] was treated arbitrarily, and her treatment worsened after reporting concerns. Further, the PTO controls this stage of litigation." Doc. 49 at 14. This argument is specious. A party cannot neglect to administratively exhaust claims that require exhaustion, but then add such claims in the pretrial order and expect to cure a failure to exhaust. If this were allowed, it would circumvent exhaustion requirements of any type.

Again, even if Plaintiff administratively exhausted these claims, they are futile.[8] The Court briefly discusses why Plaintiff fails to establish a prima facie case *infra* in Section III.E.

3.     **Title VII Disparate Treatment and Hostile Work Environment Claims Based on Race**

Plaintiff's claim of race-based hostile work environment fares the same as the hostile work environment claims based on gender and disability. She simply did not describe facts that would result in an abusive working environment. Neither did she describe facts about her alleged disparate treatment, other than hiring- and pay-based facts. Claims based on her hiring are time-barred as explained below. But her claim for disparate pay is neither unexhausted nor time-barred.

Plaintiff claims in the pretrial order that Garrison "allowed white employees to negotiate higher salaries while black employees were not given this same opportunity." Doc. 36 at 16. It appears this claim relates to when Plaintiff was hired; she was not allowed to negotiate her starting salary. Arguably, this claim is included in the EEOC charge, where Plaintiff alleged, "white similarly situated employees with less seniority and experience than [Plaintiff] are paid more than [Plaintiff] unjustifiably." Doc. 42-5 at 2. Also related to Plaintiff's hiring is an allegation in the EEOC charge that "she was treated arbitrarily including but not limited to being required to submit information white similarly situated employees were not required to submit." *Id.* But even if these hiring-related claims are covered by the EEOC charge, they are untimely. Plaintiff filed the charge on October 5, 2020. She was hired on October 19, 2019. This is more than 300 days before she filed the charge. *See* 42 U.S.C. § 2000e-5(e)(1); *Morgan,* 536 U.S. at 109. Any claim arising out of the hiring process, therefore, is untimely. Plaintiff does not even challenge the timeliness problem with her hiring-related claims.

---

[8]   More precisely, Plaintiff's disparate treatment and hostile work environment claims are futile. Failure to accommodate is not included in the pretrial order and is therefore waived.

This does not mean that Plaintiff's post-hiring race-based disparate pay claim is precluded. Plaintiff did administratively exhaust this claim.[9] And it is not untimely. The Court will therefore analyze this claim on its merits.

### 4.    Title VII and ADA Retaliation Claims Based on Gender, Race, and Disability

Plaintiff's allegations in her EEOC charge relating to retaliation lack specificity: "After making numerous complaints to management about the concerns regarding discriminatory treatment, harassment, and hostile working conditions, CP has been treated worse and believes that such treatment is in retaliation for reporting discriminatory treatment." Doc. 42-5 at 2. This sentence follows the one that says, "CP believes that her race, gender, and disability are the reason for the discriminatory treatment she has received since she began her employment with Respondent." *Id.* Plaintiff included a retaliation claim of some type, but the question is whether she has sufficiently alleged what type of discriminatory treatment complaints led to the retaliation. In other words, were her complaints about gender, race, or disability discrimination—or all three? What type of investigation could the EEOC have been expected to make based on these allegations?

The only facts alleged in the paragraph relate to "white similarly situated employees." The Court simply cannot accept that a vague statement about race, gender, and disability being the reason for discriminatory treatment is sufficient to bring in claims of gender and disability discrimination when the only specific factual allegations relate to race. Even those factual allegations are sparse. The Court is likely being too generous in finding Plaintiff has preserved a retaliation claim at all.[10] But construing the EEOC charge broadly, the Court will assume that

---

[9]   Disparate pay is the only race-based disparate treatment claim Plaintiff exhausted.

[10]   Plaintiff's allegations of retaliation are a far cry from "specific facts as to the retaliatory actions underlying each claim because each discrete incident of alleged . . . retaliation constitutes its own unlawful employment practice

Plaintiff exhausted a retaliation claim based on race only. Finding a gender or disability retaliation claim simply takes the concept of liberal construction too far. Nevertheless, the Court addresses the merits of all three retaliation claims *infra* in Sections III.D. (race) and III.E. (gender and disability).

### 5.        Constructive Discharge Claim

The EEOC charge contains no allegation of constructive discharge. It couldn't have without amendment because the dates listed are well before Plaintiff left Defendant's employ in January 2021. Plaintiff has not exhausted this claim, and the Court dismisses it.

### 6.        Administrative Exhaustion Summary

In sum, reviewing the contents of Plaintiff's EEOC charge—and giving it a liberal construction, as the Court is bound to do, *see Smith*, 904 F.3d at 1166—it would not be reasonable to expect the scope of the administrative investigation to include an inquiry into any of the following claims: (1) Title VII gender/sex disparate treatment and hostile work environment; (2) ADA disability-based disparate treatment and hostile work environment, as well as failure to accommodate; (3)  Title VII race-based hostile work environment and disparate treatment other than disparate pay; (4) gender/sex- and disability-based retaliation; and (5) constructive discharge. Because Plaintiff did not raise these claims at the administrative level, Plaintiff cannot assert them here. Any race-based Title VII claims arising during Plaintiff's hiring process are also barred as untimely. Ordinarily, the Court would dismiss all these claims without prejudice. *See id.* But ultimately the unexhausted claims also fail on the merits.[11] Dismissal with prejudice is therefore appropriate.

---

for which administrative remedies must be exhausted." *Walker*, 2021 WL 5113679, at *6 (citation and internal quotation marks omitted).

[11]   The Court does not examine the hiring-related claims on their merits, but effectively their dismissal is with prejudice as well. *See Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1271 (10th Cir. 2001) ("Despite that

**B.  Claims Not Preserved in Pretrial Order: Constructive Discharge and Failure to Accommodate**

Two of Plaintiff's unexhausted claims suffer from another fatal flaw: Plaintiff failed to include them in the pretrial order. In her response brief to the summary-judgment motion, Plaintiff spends more than four pages arguing about the merits of a purported failure-to-accommodate claim. *See* Doc. 49 at 33-38. She dedicates another half page to a purported claim for constructive discharge. *Id.* at 51-52. But neither claim is contained in the pretrial order. *Zenith Petro. Corp. v. Steerman*, 656 F. App'x 885, 887 (10th Cir. 2016) ("[A] district court has authority to sua sponte confine the litigation to the claims and issues identified in the pretrial order."). Plaintiff makes no allegation that she was constructively discharged in the pretrial order. The only mention of the term comes from Defendant, who denies Plaintiff was constructively discharged. Doc. 36 at 18. The Court will not entertain a claim Plaintiff failed to give any reference to in her claim section.[12] *See Archuleta v. McGuinness*, 71 F. App'x 775, 779 n.1 (10th Cir. 2003) (finding no claim of constructive discharge in part because the phrase was not included in the pretrial order).

Neither is Plaintiff's purported failure-to-accommodate claim properly preserved in the pretrial order. She mentions that she "requested several accommodations." Doc. 36 at 15. A variation of the word "accommodate" at least appears in the pretrial order. But Plaintiff then alleges she was retaliated against for requesting the accommodations. She alleges that "she was subjected to arbitrary and unjust treatment in the form of being given extra job duties, having her job performance micromanaged and ridiculed, being stripped of authority, and falsely accused of

---

'without prejudice' label [used by the district court for failure to timely exhaust], in real world terms the dismissal was with prejudice because any attempt by [the plaintiff] to refile her claims [with the EEOC] after the district court's order was issued would be out of time." (citation omitted)).

[12] Plaintiff does not seek leave to amend the pretrial order, let alone show good cause under Rule 16 to justify such an amendment at this stage. And such a tardy amendment would be prejudicial to Defendant such that amendment under Rule 15 would also be inappropriate.

misconduct." *Id*. at 15-16. She does not allege that Defendant failed to accommodate her disabilities. Not only did Plaintiff neglect to exhaust a failure to accommodate claim in her EEOC charge, but she also failed to preserve it in the pretrial order. She may not assert it now. *Mayhew v. Angmar Med. Holdings, Inc.*, 2022 WL 343670, at * 5 (D. Kan. 2022) (citing *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002)).

Plaintiff did not include a claim for constructive discharge or failure to accommodate in the pretrial order. She cannot cure that oversight by briefing them on summary judgment. Plaintiff may not present either of these theories to a jury for this additional reason.

### C.   Claims Not Requiring Administrative Exhaustion

The Court next turns to claims not requiring exhaustion: claims under the FMLA and 42 U.S.C. § 1981.

#### 1.   FMLA Interference and Retaliation Claims

Plaintiff asserts two claims under the FMLA: (1) Defendant interfered with her right to take FMLA leave in violation of 29 U.S.C. § 2615(a)(1); and (2) Defendant retaliated against her for taking FMLA leave in violation of 29 U.S.C. § 2615(a)(2). Doc. 36 at 17. These two theories of recovery are separate and distinct and therefore require different showings and differ with respect to the burden of proof and the timing of the adverse action. *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1131 (10th Cir. 2014). The Court begins by addressing Plaintiff's interference claim.

##### a.   FMLA Interference

Section 2615(a)(1) of the FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing] or deny[ing] the exercise of or the attempt to exercise, any right provided under" the FMLA. Plaintiff argues that Defendant interfered with her right to FMLA leave because Garrison

"forwarded the request and approval to her manager [Van Liew]. Garrison told Van Liew 'I am mad' regarding [Plaintiff's] leave request." Doc. 36 at 17. Plaintiff also suggests Defendant interfered with her leave by requiring her to take multiple unnecessary actions and incur costs while on leave to comply with Defendant's residency requirements.

There are three elements for an interference claim: (1) the plaintiff is entitled to FMLA leave, (2) some adverse action by the employer interfered with her right to take FMLA leave, and (3) the employer's action was related to the exercise or attempted exercise of his FMLA rights. *Sabourin v. Univ. of Utah*, 676 F.3d 950, 958 (10th Cir. 2012). The plaintiff bears the burden on the first two elements. *Dalpiaz*, 760 F.3d 1126 at 1132. The employer bears the burden on the third. *Id.* "An employee may recover only if she shows the employer's violation prejudiced her." *Nebeker v. Nat'l Auto Plaza*, 643 F. App'x 817, 822 (10th Cir. 2016) (citation omitted).

Plaintiff's claim for FMLA interference fails because she has not identified an adverse action. Plaintiff testified in deposition that her FMLA interference claim is based on her belief that Defendant denied her FMLA leave "at first and then it was approved." But there is no support in the record that an initial denial occurred. There is, on the other hand, evidence that Defendant approved her leave. And to the extent Plaintiff is relying on Garrison commenting "I am mad" about Plaintiff's request, Garrison's feelings are immaterial. Garrison and Van Liew had nothing to do with the decision. And Garrison did not express her feelings to Plaintiff; she emailed Van Liew. The email therefore did not discourage Plaintiff from taking leave or create a "chilling effect that caused [her] to feel that she needed to stay at work rather than take FMLA leave." *McKinzie v. Sprint/United Mgmt. Co.*, 2004 WL 2634444, at *10 (D. Kan. 2004).

Defendant's requirement that Plaintiff show continuing efforts to establish residency also fails to constitute an adverse action related to Plaintiff's exercise of FMLA rights. The residency

requirements were imposed before Plaintiff requested leave. Plaintiff sought an extension to establish residency in Wyandotte County on October 9, 2020. Defendant granted Plaintiff a six-month extension on October 22, requiring that Plaintiff provide updates every thirty days. Plaintiff requested FMLA leave on November 9, 2020. The requirement to update was imposed before Defendant granted Plaintiff's FMLA leave request. The timing defeats any allegation of causation.[13] And Plaintiff has not shown that requiring residency updates constituted an adverse action. She suggests that she had to spend money to get letters from her attorney. But Defendant expressly instructed Plaintiff that she was not required to submit a monthly letter from her attorney. Doc. 42-31. Plaintiff also submits a declaration stating, "HR also forced me to submit rental applications, which resulted in application fees and multiple credit checks." Doc. 49-24 at 2. This conclusory statement is insufficient to establish an adverse action. Plaintiff does not indicate how many fees, the amount(s), or how she was damaged by credit checks. No reasonable jury could conclude that Defendant's enforcement of its residency policy was an adverse action targeted at Plaintiff.

For the foregoing reasons, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for FMLA interference.

### b.    FMLA Retaliation

The FMLA also forbids employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2). Plaintiff asserts a claim for FMLA retaliation, arguing that Defendant unlawfully retaliated against her by:

> imposing on [Plaintiff] duties, costs, and other requirements to show
> that [Plaintiff] was making efforts to relocate within a six (6) month

---

[13]   It is Defendant's burden to prove causation on this claim. Defendant meets its burden.

> period although [Plaintiff] had already advised that she could not relocate for at least a year after the adjudication of her adoption proceedings. [Plaintiff] was required to incur cost for rental applications, letters from the Court and correspondence from her family attorney handling her adoption proceedings.

Doc. 36 at 17.

Retaliation claims under the FMLA are subject to the *McDonnell Douglas* burden-shifting analysis. *Metzler*, 464 F.3d at 1170; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first step of the *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case of retaliation. *Metzler*, 464 F.3d at 1170. A prima-facie claim for FMLA retaliation requires the plaintiff to show (1) she engaged in a protected activity, (2) the employer took an action that a reasonable employee would have found materially adverse, and (3) there exists a causal connection between the protected activity and the adverse employment action. *Id.* at 1171. Courts ordinarily continue to the second and third steps of the *McDonnell Douglas* analysis. But the Court need not do that here because Plaintiff fails to establish a prima facie case.

Plaintiff cannot satisfy her burden of establishing a prima facie case of retaliation because (1) she did not suffer a materially adverse employment action and (2) even if she did, she cannot show a causal connection between the alleged protected activity and the action. For the same reasons Defendant's enforcement of residency updates do not constitute an adverse action for purposes of Plaintiff's FMLA interference claim, they also do not qualify for her FMLA retaliation claim. And again, Defendant already advised Plaintiff of the requirement to provide monthly updates before Plaintiff requested FMLA leave. This defeats causation. Plaintiff cannot succeed on her FMLA retaliation claim when she cannot even establish a prima facie case.

The Court therefore grants Defendant's motion for summary judgment on Plaintiff's FMLA retaliation claim.

### 2.     Race Discrimination Claim under § 1981

Plaintiff brings her race-related discrimination claims under both Title VII and § 1981.[14] Plaintiff failed to exhaust most of the Title VII claims, but the same exhaustion requirement does not apply to § 1981 claims. *Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 670 (10th Cir. 2004). But another limitation does apply: a § 1981 claim against a municipality is governed by the same "custom or policy" requirement as § 1983 claims. *Randle v. City of Aurora*, 69 F.3d 441, 446 n.6 (10th Cir. 1995). A municipality can only be held liable under § 1981 for the actions of its employees when the action is taken pursuant to the municipality's "official policy," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986), or for acts it has sanctioned or ordered, *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010). This is because a municipality cannot be held liable simply under a theory of respondeat superior. *Pembaur*, 475 U.S. at 478. Rather, a plaintiff must establish the following elements to sue a municipality under § 1983 for employee actions: (1) that there was an official county policy or custom, (2) that caused a constitutional violation, and (3) that the policy or custom was enacted or maintained with deliberate indifference toward the potential constitutional injury. *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020).

Defendant raised the municipal liability issue in its opening brief but Plaintiff did not respond to it. She instead focuses on the elements for a race-based disparate treatment claim, ignoring that to hold Defendant liable under § 1981 for any such claim, she needs to show more than respondeat superior liability. She complains of Garrison's actions but does not allege Garrison

---

[14]   Plaintiff also mentions § 1981 in her ADA claim. Doc. 36 at 15-16. But § 1981 addresses race-based discrimination, not disability-based discrimination. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 (10th Cir. 1997).

was a final policymaker. She does not identify any official policy or custom that led to a constitutional violation. Plaintiff wholly ignores the municipal liability issue Defendant raises.

Plaintiff's oversight is fatal to her § 1981 claim. Section 1983 offers plaintiffs an exclusive remedy against a state actor for violations of a § 1981-protected right. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). Plaintiff cannot prevail against Defendant on a § 1981 claim without demonstrating how Defendant is liable under § 1983. Plaintiff has not even attempted to do so. The Court grants summary judgment on this claim.

### D.     Merits of Administratively-Exhausted Claims

Plaintiff properly exhausted two claims that required administrative exhaustion, both based on race under Title VII: race-based pay disparity and race-based retaliation. The Court next examines the merits of those two claims.

### 1.     Race-Based Pay Disparity Claim under Title VII

Plaintiff claims she was "paid a lower wage at the direction of Garrison than white subordinates and other black employees were also paid less." Doc. 36 at 16. A prima facie case of wage discrimination requires that a  plaintiff be "a member of a protected class and occupied a job similar to that of higher paid employees." *Allen v. Garden City Co-op, Inc.*, 651 F. Supp. 2d 1249, 1257-58 (D. Kan. 2009) (internal quotation omitted); *see also Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1215 (10th Cir. 2010). Plaintiff fails to meet her prima facie burden here.

Plaintiff is a member of a protected class but she has failed to produce evidence that those with higher salaries had similar jobs. Four employees that Plaintiff supervised made more than she did, at least until Defendant gave her a raise based on its own investigation. Plaintiff did not have a clinical nursing degree but she supervised some clinical staff. Three of the four employees were in clinical positions as a medical laboratory supervisor, a public health nurse supervisor, and a

nurse practitioner. The fourth employee, VanCleave, also lacked a clinical nursing degree. But VanCleave had an 18-year tenure with the department. *See Lucero v. Sandia Corp.*, 495 F. App'x 903, 909-12 (10th Cir. 2012) (affirming summary judgment because the plaintiff failed to establish a prima facie case by presenting evidence of the training, education, or skills of alleged similarly-situated employees).

Plaintiff also complains the two other managers were paid more than she was: Ashley Lause and Rollin Sachs. But these two individuals worked in different positions with different qualifications and duties, a different direct report, and different educational requirements. Lause is a registered dietician with 6-years tenure. Sachs was with Defendant for 20 years and has a master's degree in biology. They both reported to the Director of the Health Department. Plaintiff reported to the Deputy Director (Garrison).

Garrison had two other direct reports with higher salaries than Plaintiff: Elizabeth Groeneweghe and Wesley McKain. Groeneweghe was Defendant's Chief Epidemiologist, which has no relation to Plaintiff's job. McKain was paid about $2,000 more than Plaintiff, but had been employed by Defendant six years longer.

None of Plaintiff's comparators occupied a job similar to that of Plaintiff. Even assuming some had a similar job, there were other significant differences such as the other employees having significantly longer tenure or different qualifications than Plaintiff.[15] No reasonable jury could conclude that Plaintiff was paid less than white employees in a similar position to hers.

---

[15] Plaintiff's arguments fail even if the Court assumes she can establish a prima facie case and considers this evidence in the pretext analysis. Defendant offered legitimate, non-discriminatory reasons for the differences in pay: the seniority of other employees, the distinction that their positions were clinical and Plaintiff's was not, and varying education levels. Plaintiff has failed to present any evidence suggesting these reasons are unworthy of belief.

2.      **Race-Based Retaliation Claim**

Plaintiff alleges in the pretrial order that she suffered retaliation because she made complaints about Garrison's treatment of her and others. She claims that after the complaints, Garrison "became increasingly aggressive and combative." Doc. 36 at 17. She alleges that "Garrison issued unreasonable expectations and micromanaged and nitpicked" Plaintiff and targeted her for misconduct. *Id.* She appears to argue in her brief that the daily reports, lost job duties, and required compliance with the residency policy were all retaliatory, too. But these three bases for retaliation are not included in the pretrial order and are therefore waived.

In the absence of direct evidence, a plaintiff must establish a prima facie retaliation case under the *McDonnell Douglas* framework by showing that (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action. *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016). Once again, the Court stops here because Plaintiff hasn't established a prima facie case of race-based retaliation.

Title VII does not offer a remedy from <u>all</u> retaliation. It only protects individuals from retaliation "that produces an injury or harm that itself rises to a level of seriousness." *Johnson*, 594 F.3d at 1216 (internal quotation omitted). This is an objective standard of a reasonable employee. *Id.* "Requiring this level of adversity . . . is necessary to separate significant from trivial harms, petty slights, minor annoyances, and simple lack of good manners." *Id.* (internal quotation omitted).

Plaintiff's allegations about Garrison's behavior do not rise to the level of being materially adverse. Rather, they are the type of trivial conduct, unpleasant relationships, inconveniences, and annoyances that cause no more than de minimis harm. *Williams v. AeroFlex Wichita, Inc.*, 2020

WL 6078173, at *7 (D. Kan. 2020). Garrison did not discipline Plaintiff or take any action that would impact her employment status. To the extent the additional tracking of time when working remotely can be categorized as setting unreasonable expectations or micromanaging, the claim still fails. Time-tracking may have been inconvenient for Plaintiff. And it may have been an annoyance. But neither of these are actionable adverse actions.

The alleged materially adverse actions are also not tied to any protected action. Plaintiff alleges Garrison's behavior "got worse" after she made her complaint. Doc. 36 at 17. This allegation is almost impossible to quantify; without specific actions being alleged, a reasonable jury cannot find that Plaintiff's complaint caused Garrison to retaliate. But even if the Court considers the allegedly retaliatory act of requiring daily reports, Plaintiff fails to tie the requirement to a protected action. Plaintiff says the reports began when she started working remotely full-time, which was June 9.[16] Plaintiff complained to HR on June 15. And there is no evidence suggesting Garrison even knew Plaintiff had complained by June 22. June 22 is the date Plaintiff didn't account for some of her time because she was talking with HR. Garrison inquired about the time and Van Liew told her not to worry about it. Plaintiff's general allegation that things got worse after her complaint is insufficient to tie any of Garrison's behavior to Plaintiff's complaint.

And even if the Court were to consider Plaintiff's claim that enforcement of the residency policy was retaliatory, she also fails to tie it to a protected action. Defendant sent Plaintiff letters reminding her of the requirements of the residency policy before she filed her EEOC charge on October 5. Plaintiff requested an extension of the residency requirement on October 9. The County Administrator granted Plaintiff's request for an extension on October 22. The extension was not

---

[16] Plaintiff testified in her deposition that the required reports didn't begin until after she reported Garrison. But this allegation doesn't align with other evidence in the record. In any event, even if the reporting did not begin until after Plaintiff's complaint, it does not constitute a materially adverse action.

as much time as Plaintiff wanted. But it was not denied. And there is no evidence that the County Administrator even knew Plaintiff had filed an EEOC charge. No reasonable jury could find a connection between the two discrete events.

Plaintiff fails to establish a prima facie case of retaliation because she has not shown a materially adverse action taken against her because of her complaints of racial discrimination. The Court grants summary judgment on this claim.

### E.      Merits of Unexhausted Claims

The Court turns last to the claims first addressed. These are the claims that were not properly exhausted. But the Court determines that these claims would not survive summary judgment even if Plaintiff had identified them in her EEOC charge. Ultimately this leads the Court to dismiss the claims with prejudice instead of without prejudice.

#### 1.      Disparate Treatment Based on Gender/Sex, Disability, and Race (Non-Pay-Related)

The Court once again follows the *McDonnell Douglas* burden-shifting framework because Plaintiff does not offer direct evidence of discrimination.[17] *Young v. Physician Office Partners, Inc.*, 2020 WL 1446911, at *11 (D. Kan. 2020). And once again the Court need not proceed past Plaintiff's initial burden to establish a prima facie case. Plaintiff must establish: (1) she was a

---

[17]   Plaintiff states she has direct evidence of disability discrimination. Doc. 49 at 31, 33, 34. But she also states there is an absence of direct evidence of disability discrimination and applies *McDonnell Douglas*. *Id.* at 29-31. Plaintiff's position is unclear. The Court finds Plaintiff has not presented any direct evidence of disability discrimination. "[E]vidence is direct only if it proves the existence of a fact in issue without inference or presumption." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1213 (10th Cir. 2022) (internal quotation omitted). Direct discrimination "demonstrates on its face that the employment decision was reached for discriminatory reasons." *Id.* An example of direct discrimination in the Title VII context is a decisionmaker saying in an interview that women had an inferior knowledge about and an inferior ability to sell tools. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1217 (10th Cir. 2013).

Direct evidence of discrimination is incredibly rare. There is nothing so blatant here as to constitute direct evidence of discrimination. There was no decisionmaker saying that Plaintiff's treatment was simply because she was disabled. Thus, any claim by Plaintiff in this regard is circumstantial and must proceed under the *McDonnell Douglas* framework.

member of a protected class; (2) she suffered an adverse employment action; and (3) the circumstances give rise to an inference of discrimination. *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

The missing element of all Plaintiff's disparate treatment claims (again) is an adverse employment action based on gender/sex, disability, or race.[18] "An adverse employment action is a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012) (citation omitted). Speculative harm is insufficient, particularly when it is presented through conclusory allegations. *See Cuenca v. Univ. of Kan.*, 265 F. Supp. 2d 1191, 1208 (D. Kan. 2003).

Plaintiff was never disciplined. And Garrison's reprimands, even if unwelcome, did not result in a significant change in employment status. Plaintiff claims she was not granted her full requested extension of time to comply with the residency requirement. She did not appreciate the letters reminding her of the residency requirements. And she believes the requirement to give monthly updates caused her harm because she had to pay some amount of money for rental inquiries and her credit was checked.[19] None of these constituted an adverse employment action.

Plaintiff's other claims of unfair treatment fare no better. None of them constitute an adverse action. Garrison did not side with Plaintiff in disputes. She intervened when unnecessary. She didn't ensure Plaintiff had adequate training, and she either added or subtracted from Plaintiff's job duties and responsibilities. She didn't give Plaintiff keys or a credit card, and she

---

[18] Also noticeably absent from any ADA claim is proof that Plaintiff is disabled, she told Defendant she was disabled, or Defendant perceived her to have a disability or knew she had one. Plaintiff has offered evidence of health conditions such as diabetes. But she has not offered evidence that any health condition qualified as a disability under the ADA. *See* 42 U.S.C. § 12102(1).

[19] Plaintiff never explains how much money the rental inquiries cost or how she suffered from credit inquiries.

chewed Plaintiff out for the way Plaintiff handled a matter. These actions simply do not rise to the level of an adverse employment action. And there is no connection between Garrison's actions and one of Plaintiff's protected classes (whether it be gender/sex, disability, or race). Plaintiff complains of general disparate treatment but broadly alleges the treatment was because of her gender/sex, disability, and/or race. A reasonable jury cannot find an inference of discriminatory conduct based on one or more of Plaintiff's protected classes.

### 2.      Hostile Work Environment Based on Race, Gender/Sex, and Disability

It is unclear exactly what actions Plaintiff claims created a hostile work environment. It appears she claims that all of the actions that constituted disparate treatment also created a hostile work environment.

A plaintiff overcomes summary judgment on a hostile-work-environment claim by first showing that (1) she was discriminated against because of her sex, and (2) the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021). "Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim." *Id.* at 1252. A plaintiff must, however, "show that the environment was both objectively and subjectively hostile or abusive." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (citation omitted). A court must evaluate the totality of the circumstances and "consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Throupe*, 988 F.3d at 1252 (citation omitted).

The Court examines the totality of the circumstances. The Court first evaluates whether a reasonable jury could conclude that Plaintiff experienced <u>severe</u> harassment. Plaintiff has not

shown that any alleged harassment was severe. There was no tortious conduct or physical contact. *See Morris*, 666 F.3d at 658-59, 668 (holding harassment was not severe despite three separate tortious incidents). Nor was Garrison's behavior physically threatening. *Cf. Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1177 (10th Cir. 2020). Plaintiff acknowledged in her deposition that no one made an overt comment about her gender, disability, or race. The alleged harassment in this case falls far short of severe conduct. *Cf. id.* Garrison may not have been kind. She may have been overbearing. She may have been belittling at times. But Plaintiff has made no allegations that rise to the level of severe harassment. Under these facts, an objective person would not find any alleged harassment severe.

The Court next turns to whether a reasonable jury could find Garrison's harassment objectively <u>pervasive</u>. If the Court combines Garrison's comments as reported by Plaintiff, it appears there were three isolated comments and general hostile behavior. Garrison told Plaintiff that her daughter was beat up by a black girl; that biologic children were different from foster children; and chewed Plaintiff out about how Plaintiff handled VanCleave's request to work from home. Three comments over the course of more than a year are insufficient to be pervasive.[20] Thus, the issue boils down to whether Garrison's scattered comments could objectively establish a pervasively hostile environment under the totality of the circumstances. No reasonable jury could find they did. Garrison's comments at best were "mere offensive utterance[s]," *Throupe*, 988 F.3d at 1252, and were simply not the "steady barrage" of opprobrious comments necessary to survive a summary judgment motion. *Morris*, 666 F.3d at 666.

---

[20]   It is worth noting that each comment appears to be connected to a different protected class. One may have been based on Plaintiff's race, one on her gender, and the third is not overtly tied to any protected class.

Plaintiff has made no showing that any discrimination (regardless of its basis) was sufficiently severe or pervasive such that it altered the terms or conditions of her employment. The Court therefore dismisses her hostile work environment claims with prejudice.

### 3.   Retaliation Based on Gender/Sex and Disability

The Court has already held that Plaintiff fails to present evidence sufficient for a reasonable juror to find she suffered retaliation based on her race. Her evidence in support of her gender/sex and disability claims is even less compelling. Once again, none of Garrison's words or actions were such that a reasonable employee would consider them materially adverse. There is simply no evidence that Plaintiff was retaliated against for making claims of discrimination of any form. A reasonable jury could not find in favor of Plaintiff, even if she had properly exhausted these claims. The Court dismisses the remaining retaliation claims with prejudice.

## IV.   CONCLUSION

Plaintiff did not preserve most of her claims because she either failed to administratively exhaust them or include them in the pretrial order. Some claims don't require administrative exhaustion, but they fail on the merits. Those claims that that Plaintiff did preserve lack sufficient supporting evidence to submit them to a jury. And for the unexhausted claims, even if Plaintiff had properly exhausted them, she still fails to show a prima facie case. No reasonable jury could find in Plaintiff's favor on any of her claims, and the Court therefore grants summary judgment in favor of Defendant.[21]

 As for Defendant's motion to strike, there may be some merit to the motion. Counsel would be wise to not make a habit of submitting surprise declarations in response to dispositive

---

[21]   The Court acknowledges that this order does not address every argument made by either party or every piece of evidence Plaintiff contends supports her claims. But the Court assures the parties it has thoroughly reviewed and considered the briefs and the record. Viewing all of the evidence in the light most favorable to Plaintiff, she either failed to preserve her claims or failed to present sufficient admissible evidence for a reasonable jury to find for her.

motions. But even considering the content of the declarations does not change the outcome of the case. The motion is moot.

THE COURT THEREFORE ORDERS that Defendant's motion for summary judgment (Doc. 41) is GRANTED.

IT IS FURTHERED ORDERED that Defendant's motion to strike (Doc. 57) is DENIED AS MOOT.

IT IS SO ORDERED. The case is closed.

Dated: May 25, 2023                     /s/  *Holly L. Teeter*
                                        HOLLY L. TEETER
                                        UNITED STATES DISTRICT JUDGE